UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIC JAMES KRAFT,

        Plaintiff,

        v.                                    **DECISION AND ORDER**
                                                    18-CV-853S
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

1.     Plaintiff Eric James Kraft brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits under Title II of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.     Plaintiff protectively filed applications for disability insurance benefits with the Social Security Administration on September 7, 2014. Plaintiff alleged disability since May 5, 2014. Plaintiff's applications were denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On May 18, 2017, ALJ Lynette Gohr held a hearing at which Plaintiff, represented by his attorney Kelly Laga, appeared and testified. Vocational Expert Rachel Duchon also appeared and testified by telephone. At the time of the hearing, Plaintiff was 40 years old, with a twelfth-grade education, and past work experience in the army and as a material handler and stock clerk.

3.     The ALJ considered the case *de novo* and, on July 6, 2017, issued a written decision denying Plaintiff's applications for benefits. On January 11, 2018, the Appeals

Council denied Plaintiff's request to review the ALJ's decision. Plaintiff filed the current action on August 2, 2018, challenging the Commissioner's final decision.[1]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 16). Plaintiff filed a response on July 26, 2019 (Docket No. 17), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[1] The ALJ's July 6, 2017 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on January 11, 2018.

also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 5, 2014. (R. at 18.)[2] At step two, the ALJ found that Plaintiff has the severe impairments of widespread myopathy and depression. (R. at 18.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-20.)

---

[2] Citations to the underlying administrative record are designated as "R."

4

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, "except the claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, and occasionally reach overhead with the bilateral upper extremities." (R. at 20.) The ALJ stated that Plaintiff cannot "climb ropes, ladders or scaffolds, or work at unprotected heights or around dangerous machinery." Id. The ALJ also stated that Plaintiff is "limited to simple, routine tasks, simple work-related decisions with no strict production quotas and requires use of a cane for all ambulation." Id.

12. At step four, the ALJ found Plaintiff unable to perform his past relevant work as a material handler and stock clerk. (R. at 22.) The ALJ further found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 23.)

13. Plaintiff argues that the ALJ's final determination is flawed because her RFC determination is not supported by substantial evidence (Docket No. 8-1 at 25-26); because the Appeals Council failed to consider or admit into evidence treatment records from after the ALJ closed the record (Docket No. 8-1 at 15); and because the ALJ erroneously disregarded a medical opinion that Plaintiff was disabled (Docket No. 8-1 at 19). Defendant argues that the Appeals Council decision was correct because it was supported by substantial evidence (Docket No. 16-1 at 9); that the additional evidence Plaintiff submitted was cumulative (Id. at 11); and that the ALJ was correct to disregard a medical opinion that Plaintiff was "totally disabled " (Id. at 13). For the reasons that follow, remand is warranted.

14. Plaintiff presented to doctors with consistent symptoms, but no clear diagnosis. In 2014, he stopped working after falling asleep at the wheel while driving for his job. (R. at 422.) He complained of fatigue and leg pain throughout the period from his alleged onset to the time of the hearing. (See, e.g., R. at 287, 290, 300, 305, 327, 345-46, 387, 423). His trouble walking was noted by several doctors, with one of them describing a "short shuffling gait" (R. at 643.) He was "unable to get from squat to stand or sit to stand without using cane as leverage" (R. at 644), and was prescribed a cane for walking (R. at 635).

15. On September 11, 2014, Dr. Steve Dofitas, a neurologist at Dent, noted sensory impairments from the knees down, "with impairment to vibration, cold, as well as impaired sensation to sharp objects," and hypoactive deep tendon reflexes. (R. at 303.) Dr. Tomas Holmlund, also a neurologist at Dent, noted on December 17, 2015, that Plaintiff "raise[d] from a chair by pushing off and ambulate[d] in an unusual fashion," "wobbl[ing] a bit back and forth." (R. at 424.) Further, Plaintiff could not "tandem walk" on his heels or toes. Id. Dr. Holmlund was "struck by his sensory disturbance," noting that Plaintiff could not feel microfilament 4 up to his knees. (R. at 424.) In March 2016, Plaintiff reported to mitochondrial specialist Dr. Corstiaan Brass that he was unable to climb or descend stairs in his house and had to go up and down them on his behind. (R. at 617). Plaintiff needed help getting into and out of the shower, as noted by the ALJ in her opinion. (R. at 21.)

16. Testing revealed abnormalities, but did not fully explain the cause of Plaintiff's symptoms. In June 2014, electron microscopy showed no inflammation, mild variation in fiber diameter, and the presence of "rare subsarcolemmal autophagic

6

vacuoles." (R. at 432.) However, "no specific pathologic abnormality [was] noted." Id. An October 2014 EMG showed "mid-to-moderate myopathic changes" throughout the lower extremities. (R. at 301.) A Coenzyme Q10 test in October 2014 fell within normal range (R at 354.) A lumbar MRI in January 2016 had normal results. (R. at 426, 591.)

17. In October 2014, Dr. Brass's "assessment and plan" for Plaintiff listed mitochondrial myopathy and mitochondrial cytopathy along with dry eyes and weight loss. (R. at 357.) The label "mitochondrial cytopathy" falls out of the record until December 2016, while variations of myopathy remain. None of these labels appear to have provided clarity to doctors. As late as December 2016, when "mitochondrial cytopathy" reappears in his diagnoses, Dr. Brass noted that Plaintiff suffered from "some type of an intrinsic muscle degenerative disorder." (R. at 642.) The records consistently show doctors trying to find a diagnosis and treatment to match Plaintiff's puzzling symptoms.

18. In December 2014, Plaintiff received a full functional assessment by Physical Therapist Mark Howard, at the request of Dr. Brass. Howard's observations match those elsewhere in the record: weakness; pain; and a "stiff" gait. (R. at 381.) In the course of functional testing, Plaintiff was unable to complete a step test, which required climbing onto a 12-inch step 24 times a minute for three minutes. (R. at 385.) Howard noted that Plaintiff's balance was abnormal, with his left unilateral stance unsteady. (R. at 381.) Howard found that Plaintiff was able to lift and carry 15-20 pounds for weights for a distance of 25 feet (R. at 377), and ultimately opined that Plaintiff had the ability to perform light work (R. at 378).

19. In her decision, the ALJ gave significant weight to the findings of physical therapist Howard regarding Plaintiff's abilities, but reduced Howard's "light work"

7

assessment to "sedentary."[3] (R. at 20.) Although the ALJ did not discuss her reasoning in depth, the sedentary classification is supported by the evidence. The ALJ noted Plaintiff's largely normal lab results, normal MRI, and the open muscle biopsy showing "no specific abnormality" in determining that Plaintiff could do sedentary work. (R. at 21.) Her decision does not discuss the near-universal finding that Plaintiff had trouble walking, but at the hearing, the ALJ discussed with Plaintiff his need for a cane (see R. at 79), and she added to his RFC that he "require[d] a cane for all ambulation" (R. at 20).

20.   Up to this point, the RFC is based on substantial evidence. But it is difficult to see why ALJ found an ability to balance and climb. Nothing in the evidence supports an ability to balance or climb. Howard, to whose assessment the ALJ gave "significant weight" in formulating her RFC (R. at 21), noted Plaintiff's difficulty with balance, and inability to climb. (See R. at 381, 385.) Additionally, the ALJ did not explain how balancing and climbing ramps and stairs could be accomplished by someone who she herself found needed for a cane for all ambulation. Because there is no discernible evidence supporting Plaintiff's ability to balance or climb, some discussion of the ALJ's reasoning was needed. See Krupczyk v. Comm'r of Soc. Sec., 342 F. Supp. 3d 352, 360 (W.D.N.Y. 2018) ("Some meaningful discussion as to why the ALJ disagreed with these limitations is imperative for the Court to make a well-informed determination as to whether the RFC is supported by substantial evidence, particularly where the RFC requires occasional bending, stooping, overhead reaching, balancing, twisting, and climbing stairs.")

---

[3]Plaintiff argues that Howard's opinion is "stale," because the testing was done in 2014, and Plaintiff's condition worsened after that. But the reduction from "light" to "sedentary" appears to take that reduction in capacity into account.

21. The ALJ failed to provide any meaningful discussion of her reasons for including the ability to balance and climb in her RFC discussion. Nor does it appear that substantial evidence supports the ALJ's findings that Plaintiff could balance and climb. The record evidence, in fact, is to the contrary. For this reason, remand is warranted.

22. Plaintiff also argues that remand is warranted because the Appeals Council did not consider "new" evidence presented to it and because the ALJ disregarded a medical doctor's opinion that Plaintiff was "totally disabled." Because remand is warranted on other grounds, this Court will not consider these arguments here.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:    November 7, 2019
             Buffalo, New York

                                                  s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                United States District Judge